UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. S2-4:21-CR-00156-MTS |
| | ) | No. 4:20-CR-00579-AGF |
| KEONDRAY BROOKS, | ) | |
| | ) | |
| Defendant. | ) | |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

### 1. PARTIES:

The parties are the defendant Keondray Brooks, represented by defense counsel Robert Taaffe, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

### 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Count One of the indictment in Case No. S2-4:21-CR-00156-MTS, the government agrees to move for the dismissal as to the defendant of Counts Nine and Ten at the time of sentencing.

Page 1 of 19

Furthermore, in exchange for the Defendant's voluntary plea of guilty to Count One of the Indictment in Case No. 4:20-CR-00579-AGF, the government agrees to move for the dismissal as to the defendant of Count Two in that Indictment at the time of sentencing.

The United States also agrees that no further federal prosecution will be brought in this District relative to the defendant's conspiracy to distribute and possess with the intent to distribute controlled substances, and unlawful firearms possession, as reflected in both of the aforementioned Indictments and in this Agreement, of which the Government is currently aware. The United States also agrees to request that the Court impose concurrent sentences for the sentences in the above-referenced cases (i.e., case numbers 4:20-CR-00463-SRC and 4:20-CR-00579-AGF).

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

The defendant also agrees, pursuant to his guilty plea, to forfeit to the United States all property subject to forfeiture under the applicable statute(s), to the extent defendant has an interest in said property, including but not limited to:

a.    Approximately $16,600.00 in U.S. Currency;
b.    Approximately $5,638.00 in U.S. Currency;
c.    Approximately $30,537 in U.S. Currency;
d.    Approximately $2,000 in U.S. Currency;

e.    Approximately $3,000 in U.S. Currency;
f.    2015 Jeep Grand Cherokee, VIN: 1C4RJFDJ4FC832149;
g.    2014 Lexus IS250 AWD, VIN: JTHCF1D22E5010860;
h.    One Noreen Firearms Model BBN223F multi caliber pistol;
i.    One Glock Model 23 .40 caliber pistol;
j.    One Glock Model 42 .380 caliber pistol;
k.    One Weaponsmart Model WMX-15 multi caliber rifle;
l.    One Colt Model M4 Carbine .22LR caliber rifle;
m.    One Noreen Firearms Model BBN233F multi caliber pistol;
n.    One Smith and Wesson Model M&P-15 multi caliber rifle;
o.    One Romarm/Cugir Model Micro Draco 7.62 x 39 pistol;
p.    One Smith and Wesson, Model 642, .38 caliber pistol;
q.    One Glock Model 630, .40 caliber pistol;
r.    SCCY 9mm pistol;
s.    Smith and Wesson, Model M&P, .45 caliber pistol;
t.    Glock 17 9mm pistol,
u.    Smith and Wesson .38 Special revolver;
v.    G30 GEN4 semiautomatic firearm; and
w.    Miscellaneous Magazines and Ammunition

## 3. ELEMENTS:

### Case No. S2-4:21-CR-00156-MTS

As to Count One, the defendant admits to knowingly violating Title 21, United States Code, Sections 841(a)(1) and 846 and admits there is a factual basis for the plea, and further, fully understands that the elements of the crime are as follows:

Beginning on an unknown date and continuing for a period of time, including June 8, 2021 and continuing up to the date of the Indictment, with the exact dates unknown, within the Eastern District of Missouri, and elsewhere;

    (i)    two or more persons reached an agreement or came to an understanding to distribute and possess with the intent to distribute a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance;

(ii)     the Defendant voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some later time while it was still in effect;

(iii)    at the time the Defendant joined in the agreement or understanding, he knew the purpose of the agreement or understanding; and

(iv)     the agreement or understanding involved 40 grams or more of a mixture or substance containing a detectable amount of fentanyl.

<u>Case No. 4:20-CR-00579-AGF</u>

As to Count One, the Defendant admits to knowingly violating Title 21, United States Code, Section 841(a), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are as follows:

On or about August 20, 2020, in the Eastern District of Missouri,

(i)      the Defendant possessed fentanyl, a Schedule II controlled substance;

(ii)     the Defendant knew that he was in possession of, or intended to possess, fentanyl; and

(iii)    the Defendant intended to distribute some or all of the fentanyl to another person.

## 4. FACTS:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

Page 4 of 19

A.    Case No. 4:20-CR-00579-AGF

On August 20, 2020, St. Louis Metropolitan Police Officers were patrolling in North St. Louis when they observed a silver Ford Fusion speeding on Hamilton Avenue. Investigators attempted a traffic stop, but the suspect vehicle continued to speed and violate various traffic laws. Eventually the vehicle stopped on Minerva Avenue, and the driver, Defendant Keondray BROOKS, immediately exited the driver's seat and fled on foot. K. BROOKS was arrested after a foot pursuit. K. BROOKS was read his *Miranda* rights. K. BROOKS mentioned that he thought he had ditched a gun while exiting his vehicle.

An inventory search of the vehicle prior to towing it revealed the following located under the driver's seat: (1) a loaded Red Glock 17 semi-auto handgun with a drum magazine, and (2) 181 capsules in two plastic baggies containing approximately 17.96 grams of fentanyl. The substance was tested at the SLMPD crime laboratory, where its contents were confirmed. The parties agree that expert testimony would establish that this quantity and its packaging were inconsistent with solely personal use and that it was intended for distribution.

B.  Case No. S2-4:21-CR-00156-MTS

i.      Initial investigation into co-defendant Lemarius LOGAN

Beginning in November 2020, investigators with the Federal Bureau of Investigation and the St. Louis County Police Department initiated an investigation into the drug trafficking operation of co-defendant Lemarius LOGAN. Investigators introduced an undercover officer to LOGAN for the purpose of purchasing fentanyl from LOGAN and LOGAN's co-conspirators. Between November 2020 and February 2021, investigators conducted multiple controlled

purchases of varying quantities of fentanyl directly from LOGAN. Each of these purchases were sent to the St. Louis County Police Department Laboratory, where they tested positive for fentanyl.

Investigators obtained a precision location information warrant for LOGAN's cellular telephone (hereafter the "cellular device") in order to track his location. This, along with physical surveillance, revealed a consistent pattern where LOGAN would use multiple residences to facilitate his drug distribution, including 10748 Hallwood Drive and 2150 E. Aventura Way, both in St. Louis, MO and within the Eastern District of Missouri. Additionally, LOGAN would regularly utilize a 2015 Jeep Grand Cherokee, VIN: 1C4RJFDJ4FC832149; and a 2014 Lexus IS250 AWD, VIN: JTHCF1D22E5010860, in order to conduct drug sales. LOGAN utilized these vehicles on occasion during controlled purchase operations, as well as during physical surveillance of hand-to-hand transactions with unknown individuals.

Investigators obtained premises search warrants for both of the above-referenced addresses. On February 25, 2021, the search warrants were executed. LOGAN was present at 10748 Hallwood Drive, where he was taken into custody. LOGAN attempted to discard a satchel/man-purse while running from officers, prior to being arrested. In the satchel was a distributable amount of suspected fentanyl and a loaded firearm.

The following items were seized either from LOGAN directly or inside of 10748 Hallwood Drive:

- One (1) Romarm/Cugir 7.62 x 39 pistol, Model: Micro Draco
- One (1) Smith and Wesson multi caliber rifle, Model: M&P-15
- One (1) Noreen Firearms multi caliber pistol, Model: BBN223F
- One (1) Colt .22LR rifle, Model: M4 carbine
- One (1) Weaponsmart multi-caliber rifle, Model: WMX-15
- One (1) FN 5.7 x 28 pistol
- One (1) Glock .40 caliber pistol, Model: 23
- One (1) Glock .380 pistol, Model: 42

Page 6 of 19

- various rounds of firearm ammunition and assorted magazines
- (1) Lexus key fob, VIN: JTHCF1D22E5010860
- (1) Jeep key fob, VIN: 1C4RJFDJ4FC832149
- One (1) clear plastic bag containing capsules with suspected Fentanyl
- U.S. Currency in the amount of $1,082.00

Investigators also seized a number of cellular telephones, including the cellular device. The county laboratory revealed approximately 150 grams of a mixture or substance containing a detectable amount of fentanyl seized from the Hallwood residence.

Investigators searched 2150 E. Aventura Way the same day, and found LOGAN's ID and Social Security card, approximately $16,600, and approximately 269 grams of a mixture of fentanyl and Para-fluorofentanyl. Expert testimony in the event of a trial would establish that these amounts are not consistent with an amount intended solely for personal use, but are intended for distribution.

LOGAN was booked on the above drug and gun charges at this time. He then engaged in a series of recorded jail telephone calls after being processed, where he spoke to a girlfriend, and co-defendant, Marcayla Jones. During one of these calls, LOGAN instructed JONES as to how to keep the enterprise running. JONES informed LOGAN that they (law enforcement) didn't find all of the drugs and/or money. LOGAN identified the Target Device for JONES as now being utilized by an individual named "JET," later identified to be Defendant Keondray BROOKS.

ii.    Investigation into Defendant Keondray BROOKS.

After the execution of the search warrants, the precision location information for the cellular device indicated that the device was not in police custody despite its seizure. Investigators discovered that the cellular device's telephone number was ported to a new physical phone, and

was then being used by the defendant, Keondray BROOKS, a/k/a "JET," in furtherance of the ongoing conspiracy.

Investigators made contact with K. BROOKS by dialing the same number of the cellular device and conducted four additional controlled purchases of lab-tested fentanyl directly from K. BROOKS.   This was done through the use of an undercover detective, and the transactions happened directly with K. BROOKS. Law enforcement investigators, further, obtained additional precision location information related to the cellular device, and this information established a pattern of activity on K. BROOKS' part similar to co-defendant LOGAN. K. BROOKS utilized multiple residences throughout the day and in between drug sale transactions. These included 1505 N. 20th Street; 8450 Gast Place, Apt. 286; and 8450 Gast Place, Apt. 288.

The investigation led to an ultimate buy-bust operation of K. BROOKS on May 19, 2021, where he was taken into custody with a distributable amount of fentanyl (approximately 22 grams) on his person during an attempted drug sale. This fentanyl was tested at the lab and its contents were confirmed to be fentanyl.

That same day, three additional premises search warrants were executed on the residences utilized by K. BROOKS in furtherance of the conspiracy.

At 1505 N. 20th Street, investigators seized approximately $2,000, a Smith and Wesson .38 Special revolver, and other drug trafficking paraphernalia to include scales.  K. BROOKS had left this residence just prior to being taken into custody.

At 8450 Gast Place, Apt. 286, additional drug trafficking paraphernalia was seized, including digital scales, a Dormin bottle, empty Dormin containers, a grinder, and empty capsules. Investigators also located approximately $3,000.

At 8450 Gast Place, Apt. 288, additional drug trafficking paraphernalia was seized, along with a G30 GEN4 semiautomatic firearm, loaded with twenty live rounds in an extended magazine.

The parties agree that K. BROOKS and one or more other persons, including LOGAN, reached an agreement or came to an understanding to distribute and possess with the intent to distribute a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance. The parties further agree that K. BROOKS voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some later time while it was still in effect, and knew the purpose of the agreement or understanding at that time.

Given the nature of the drug trafficking conspiracy, it is difficult to ascertain the precise quantity of controlled substances attributable to K. BROOKS, based upon his own conduct and the conduct of other co-conspirators reasonably foreseeable to him. However, as a result of the totality of the investigation, which includes but is not limited to drug seizures, controlled purchases, recorded jail calls, and K. BROOKS own statements and the statements of his co-conspirators, the parties agree to hold K. BROOKS accountable for at least 280 grams, but less than 400 grams, of fentanyl.

## 5. STATUTORY PENALTIES:

Case No. S2-4:21-CR-00156-MTS

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty in Count One is imprisonment of not more than 40 years, a fine of not more than $5,000,000, or both such imprisonment and fine. The Court shall also impose a period of supervised release of not less than four years. **The defendant also fully**

understands that the crime to which a guilty plea is being entered requires a mandatory minimum term of imprisonment of at least five (5) years.

Case No. 4:20-CR-00579-AGF

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty in Count One is imprisonment of not more than 20 years, a fine of not more than $1,000,000, or both such imprisonment and fine. The Court shall also impose a period of supervised release of not less than three years.

## 6. U.S. SENTENCING GUIDELINES: 2021 MANUAL:

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

### a. Chapter 2 Offense Conduct:

(1) **Base Offense Level:** With respect to both Count One in Case No. S2-4:21-CR-156-MTS, and Count One in Case No. 4:20-CR-579-AGF, the parties estimate that the base offense level is 28, as found in Section 2D1.1(c)(6). The parties agree that the quantity of fentanyl for which the defendant is accountable, including relevant conduct, is at least 280 grams and less than 400 grams, resulting in the agreed Base Offense Level.

(2) **Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply:

The parties agree that 2 levels should be added pursuant to Section 2D1.1(b)(1), because the defendant possessed a dangerous weapon (one or more firearms).

**b. Chapter 3 Adjustments:**

**(1)  Acceptance of Responsibility:** The parties agree that three levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty.  The parties agree that the defendant's eligibility for this deduction is based upon information presently known.  If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

**(2)   Other Adjustments:**   The parties agree that the following additional adjustments apply:   None.

**c. Other Adjustment(s) and Disputed Adjustments:**     None.

**d. Estimated Total Offense Level:** The parties estimate that the Total Offense Level is 29, unless defendant is a Career Offender.  Depending on the underlying offense and defendant's criminal history, defendant could be a Career Offender pursuant to Section 4B1.1.  If the Court finds defendant is a Career Offender, the Total Offense Level may be higher and the Criminal History Category may be as high as Category VI.  Defendant has discussed these possibilities with defense counsel.  Both parties reserve the right to argue that the defendant is or is not a Career Offender.

e.  **Criminal History:**  The determination of the defendant's Criminal History Category shall be left to the Court.  Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category.  The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

f.  **Effect of Parties' U.S. Sentencing Guidelines Analysis:**  The parties agree that the Court is not bound by the Guidelines analysis agreed to herein.  The parties may not have foreseen all applicable Guidelines.  The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.  The Government recognizes it is bound by the specific agreements made herein but reserves the right to answer any questions the U.S. Probation Office or the Court might have related to sentencing or present evidence at the Court's request.

## 7.  WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:

a.  **Appeal:**  The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

(1)  **Non-Sentencing Issues:**  The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

(2)  **Sentencing Issues:**  In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing

Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

**a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

**b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:**

Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

c. **Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

d. **Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $200, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

e. **Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

f. **Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, costs of incarceration and costs of supervision. The defendant agrees that any fine imposed by the Court will be due and payable immediately

g. **Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation,

whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon his interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. Defendant specifically agrees to the forfeiture of the following:

a.  Approximately $16,600.00 in U.S. Currency;
b.  Approximately $5,638.00 in U.S. Currency;
c.  Approximately $30,537 in U.S. Currency;
d.  Approximately $2,000 in U.S. Currency;
e.  Approximately $3,000 in U.S. Currency;
f.  2015 Jeep Grand Cherokee, VIN: 1C4RJFDJ4FC832149;
g.  2014 Lexus IS250 AWD, VIN: JTHCF1D22E5010860;
h.  One Noreen Firearms Model BBN223F multi caliber pistol;
i.  One Glock Model 23 .40 caliber pistol;
j.  One Glock Model 42 .380 caliber pistol;
k.  One Weaponsmart Model WMX-15 multi caliber rifle;
l.  One Colt Model M4 Carbine .22LR caliber rifle;
m.  One Noreen Firearms Model BBN233F multi caliber pistol;
n.  One Smith and Wesson Model M&P-15 multi caliber rifle;
o.  One Romarm/Cugir Model Micro Draco 7.62 x 39 pistol;
p.  One Smith and Wesson, Model 642, .38 caliber pistol;
q.  One Glock Model 630, .40 caliber pistol;
r.  SCCY 9mm pistol;
s.  Smith and Wesson, Model M&P, .45 caliber pistol;
t.  Glock 17 9mm pistol,
u.  Smith and Wesson .38 Special revolver;
v.  G30 GEN4 semiautomatic firearm; and
w.  Miscellaneous Magazines and Ammunition

Page 15 of 19

The defendant consents that the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil, or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the Government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional, statutory, and equitable challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses charged against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the

proceeding.  The defendant's counsel has explained these rights and the consequences of the waiver of these rights.  The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel.  The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel.  Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation.  In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory.  Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case.  In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea.  The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11.  CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement.  The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

April 18, 2022
Date

GEOFFREY S. OGDEN
Assistant United States Attorney

May 5, 2022
Date

KEONDRAY BROOKS
Defendant

5/5/22
Date

ROBERT TAAFFE
Attorney for Defendant